on behalf of Jonathan Castle. May it please the court. Without rehashing what we have in the briefs here, I'd like to point very quickly to two reasons why the should have been allowed, therefore, by the district court, and also is critical to the defense case. The first is that government expert Rudolf, in the government's case in chief, testified about the videotape, and this was the two-second clip of the videotape. If you recall the evidence here against Mr. Castle, it says two-second videoclip tape and McDonald's testimony that he was firing an automatic weapon. On the videotape, Rudolf testified in the case in chief, and experts of record 87, that in examining the videotape and watching that, he observed how the shooter was standing, how his finger was positioned on the trigger, and how he gripped the weapon, and how he manipulated the trigger, and the auto-burst of the fire. All those four things, this is an automatic weapon, fully automatic weapon. Of course, exhibit two, which is the sports during court, was not an automatic weapon. That was Silva's weapon, and the defense was, that is the same weapon as the one that was fired on the videotape. And Silva was present also with McDonald's, and Silva testified for the defense that he was there. Yes, you saw McDonald videotaping the dog and the weapon, but that was his cold sportswear, and their girlfriend turned them in, turned these weapons over, like seven weapons, none of which were automatic weapons. And what happened is, after Rudolf testifies to that, that's the government's case, and it's case in chief. Rudolf, Silva then comes in, testifies about the, no, that's the same weapon, that's my cold sportswear that was on the videotape. I was there that day. He wasn't firing any automatic weapons, hasn't fired any automatic weapons. Silva was a former military. He'd fired M-16s before, talked about his experience with that. And then the defense also put on the licensee holder of these trigger actuators, and there's several different types. The Exhibit 2 had the GAT trigger actuator, a large trigger actuator that sits below the trigger guard, the ring that's below your finger. The one on the video had the TAC trigger actuator, which is a very small piece that fits right on the trigger guard and was not visible in the videotape. And Silva testified that that was his weapon. What you have is, you've got... I'm sorry, the testimony you just cited was whose testimony about the GAT? That was the defense expert. He did testify? Yes, it was the defense expert, which was Troncoso, and he's the licensee and manufacturer of these. So he looks at the gun on the video and says... And he testifies that it's consistent. No, not precisely. That it's consistent, that you can't basically tell. In a two-second video clip, you cannot tell by looking at a two-second video clip. His exact testimony was that it's consistent with... What does the two-second got to do with it? I mean, didn't they freeze frame? Can't you freeze frame? Right, they did freeze frame. But the important point here is that when Doff comes back on rebuttal, he's not talking now about the stance and the pulling of the trigger and how you're reflexing back. He talks about the barrel link. And he gives specific testimony about the barrel link, the stock, and how this weapon in the video does not compare to the weapon in court. They are two separate weapons. That's issued to Record 144, among other sites. And then the defense on the cross says, well, you can change the barrel of the weapon. This is on the rebuttal. This is what makes this rebuttal so important. And the government's expert says, yes, on certain firearms, yes, you can. I'm kind of suggesting, this is page 192, actually the Record 144, kind of suggesting that, yeah, on certain weapons, you can change. But implicitly suggesting that Exhibit 2, you can't change. So the two reasons that the district court, the two specific reasons, that the proffer's rebuttal testimony of Sobo is so important, and at first was admissible, was that you've got Rudolph testifying on direct, not about how the barrel link is different, how the physical characteristics of the gun is different than the one in court, but how, you know, you pull back and he's. It seems to me what you're saying is that the defendant's entitled to serve rebuttal because his attorney didn't ask the next logical question. Well, let me ask you, Mr. Expert. You're the expert. Isn't it possible the barrel can be changed? And your response is, well, gosh, on some weapons, yes. And, of course, the question that occurs to everybody in the courtroom is, well, go ahead and ask him now. What about this weapon? And he never asked the question. He never asked the question, but I don't think that resolves the issue. He did. The government, and the bottom line is, in rebuttal testimony, the government presented new evidence. New evidence that the defense had the right to rebuttal. Mr. Lathrop. As I understand the defense's theory, the defense's theory is Mr. Silva's gun, which is present in the courtroom, and the gun on the videotape being fired by Mr. Castle were the same weapon, although I believe there was one difference, and that is that Mr. Silva said that he had a different trigger actuator on there. Is that correct? He said that, yes. The video represents his gun but with a different trigger actuator than the gun that was in the courtroom. Yes. He testified that these are the same weapons, one that's on the videotape, one that's present in the courtroom. Now, as I understand what you wanted to argue on, sir, rebuttal, was that we had a different stock and a different barrel on the gun. That's not an argument that this is the same gun. Isn't this a different theory? He testified that it was his gun that was fired. They were both his guns. Right, but if I say this is like this, and now I want to come back and say except that this one has a different barrel and different stock, that doesn't sound like the same gun. I mean, this sounds like a different theory on, sir, rebuttal than what you've argued all during your case in chief. Not at all. I think it might be a matter of semantics. I mean, I believe that Silva testified that that was his gun that's depicted in the videotape. His gun that's in the courtroom. His gun that's in the courtroom. In the videotape. Well, the bottom line is you've got the problem is with Rudolf testified that Could you just step back a minute and tell me what is the standard for, sir, rebuttal? What what does the discretion? No, no, I'm sorry. Let me finish the question. What does the judge at the time he is ruling? What should have Judge Matz applied as the test? Is it that it's a new issue? It's a new subject. Or is it that it's cumulative? Or are those different tests at all? I think they are possibly different tests. I think that the judge should determine whether beyond whether it's a new subject. Obviously, they were talking about the weapon. But what is the standard? The standard is cumulative, right? Well, yes, the standard is cumulative. And in this case, you had for the first time on rebuttal Rudolf testifying about the length of the barrel and how that did not measure up to the length of the barrel on Exhibit 2. But then you actually had Rudolf saying, no, he can't measure the barrel. I mean, that was the you had Rudolf first have to find a rebuttal that, yes, the barrel lengths don't match back and forth. And then on cross-examination during rebuttal, you had the district court say, come on, please, you need to listen more carefully to the question because you're not answering it. The defense counsel has asked very clearly twice, has asked you to say whether you could determine what the measurements were of the barrel. And he says, I'm sorry, Judge, this is on rebuttal Rudolf. No, I cannot measure from the video. But I think Judge Bybee's question goes to Silber is going to impeach himself. I mean, the theory, the defense's theory all along has been this is the same weapon. This is the same weapon. Now, Silber is going to take it. And Silber testified to that. He said it's the same weapon. Now, on story rebuttal, he wants to take the stand and say, no, it looks different. It's a different weapon. It looks different. I mean, I can see it looks different, and here's why. I understand. I make a difference, Your Honor. The simple reason is we're not talking about technical legal differences here. His weapon has a number of different barrels. Your theory is that it was the same gun on the video, same gun in the courtroom for the material aspects, which is whether it was automatic and had this trigger. Precisely. Given that, was that theory argued to the jury? Yes, it actually was. Based on what? Well, that's the problem. That's what the prosecutor points, and the theory was actually argued. I'm sorry. Were you the trial counsel? No, I was not. Okay. Did the defense counsel argue to the jury it was the same gun just because it wasn't? These things are stock and the barrel interchangeable? Yes. Was there a foundation in the record for that? No. That was the problem. And that was the Silber rebuttal testimony. The defense counsel and the prosecutor points that out in the prosecutor's brief, in the AG's brief. The theory was actually argued during the closing argument that they were changeable and that what you've got is you have a passage of two years' time and it was readily changeable. He did argue it. He argued it. But he argued it. The problem was he argued it without any foundation in the record. Well, there was foundation, though, because the government expert testified on some guns it is interchangeable. Right. I mean, at least to that extent it's in the record. Right. To that extent it is in the record. But the inference there is a suggestion by the government that it's not, that this weapon is not changeable. Was Silber prepared to testify that, in fact, he had changed the stock and the barrel? Yes. And how much difference are we talking about in the barrel? What would Silber have testified to? This is on page 16 of the opening brief. And this is the defense counsel we would like to proffer the following testimony. I'll just quote it here. And as an offer of proof, we would show through the testimony of Gary Silber that the barrel on this particular weapon has been changed in the past and that he has seen John Castle change the barrel and that we have a similar barrel similar to the one that he's used in the past. Are we talking about a difference in length or just a difference in color? It's not clear on the record. We don't know. How about the stock? Is it a larger stock? Is the one a different kind of wood? It's not clear on the record what, I mean, other than Silber would have testified that the stock, barrel, and lock were changeable. And, in fact, it turns out that this weapon is right. He changed it in 10 seconds. Everything is changeable. Would he have testified not only that it is changeable but that he had in fact changed it and that that's the stock and the barrel that are represented on the film or different from the stock and the barrel on the gun in the courtroom? That he had seen him change it on occasion and that the one in the video did depict his weapon? I mean, I don't want to argue around semantics. I'm trying to directly answer your question. That he had seen Mr. Castle change the lock, stock, and barrel on that, this was the proper testimony, on his colt supporter. And that was his colt supporter in court, and that's his colt on the video tape. Okay. And that was, I mean, when the district judge. I think we have your point. I'll submit it now. We'll give you, well, you're negative, but I'll give you a minute. Good morning, Your Honors. May it please the Court. What is at issue in this case of whether or not. . . I may have gotten a little lax here. I'm not sure everybody's announced their names when they've come up. I'm looking here and calling people as they come up. Just be sure that when you make your appearances up there for the record, state your names. Thank you, Your Honor. Garth Heyer, good morning for the government. My fault. I'm sorry? It was my fault. No, I'm sure it was mine. What is at issue in this case? What was really going to be the nature of Mr. Silk? Yes, Your Honor. I think the first issue I'd like some clarification is what's the standard for deciding whether or not Sir Rebuttal testimony should be admitted or not? Whether or not it should be admitted, and, again, I'm going to guess to what you're asking here, is what analysis should Judge Mass have gone into in deciding whether or not to allow Mr. Silk to testify? What's the legal standard? The legal standard is. . . Is it new evidence? Is it a new issue? I mean, Judge Mass talks about both. This is new. Isn't the standard whether or not it's cumulative? The standard is whether or not it's cumulative, and along with that comes could this have been anticipated and could the defendant have produced this evidence in its case in chief? Where's that? What's the authority for that? One moment. The case that we cite in our brief for that, Your Honor, is the First Circuit case of United States v. Leon Delfis, where the court said that ordinarily allowed when it concerns issues that are raised prior to the opponent's rebuttal and the proffered evidence could have been introduced at that time, and that's exactly what we have here. But that may be the First Circuit. What's the standard in the Ninth Circuit? Cumulative. The Ninth Circuit standard is cumulative. Yes, Your Honor. Okay. Now, if something is brand new, and let's assume this testimony Silva wanted to put on was new, as Judge Mass seemed to think it was, because it's now talking about a different theory, that is that the stock and the barrel were changed out, why is that cumulative? Cumulative of what? Because you argue, well, and I thought you might be arguing that, well, it's cumulative because there's already evidence in the record about this, and we've heard some discussion about that. But cumulative and new may be intertwined in some way, but if it's brand new, then how can it be cumulative? I would say, Your Honor, in this case it was not brand new. In fact, this issue was ever present throughout the case. At the outset of the case, the government clearly let the jury know the gun on the videotape is not the gun in court. And as Judge Mass even recognized, the surprise was when Mr. Silva took the stand and said, actually, that gun is the gun in court. And he did two things in discussing the appearance. He said, yes, the gun on the video looks like my gun. And when shown the gun in court, he specifically referenced, and this is the excerpt of record, page 118, lines 8 through 15, he referenced this is the same serial number, the same hand grips, the same flash suppressor, and the same sights. And yet that's the very thing that properly Adam Rudolph, the special agent expert, testified were very different about the gun in the video and the firearm in court. And the opportunity was clear there and obvious that if there were these differences, which the owner of the gun would clearly know, you would point that out to the jury, that this is my gun here in court, and that's also the gun on the videotape. However, due to my ability to change some things, the flash suppressor is different. The stock is different. The barrel is longer. The fore grip is different. Mr. Silva didn't say that. He said the gun is. When were those change issues introduced into the trial? Well, I. The fact that the, that the, what was depicted in the video, it actually had the barrel, it had a different barrel and had a different stock from what appears in court. It's introduced at the time Mr. Silva testifies that the gun in court is the gun on the videotape because the differences are clear, especially to the owner of the gun. While someone who might not be all too familiar with firearms might not notice those differences, when they're put side by side, which they were repeatedly throughout the case, those differences are present. But yet in his testimony, Mr. Silva did not explain or point out why that was the case. Even though Mr. Silva did take the time to explain that the trigger activator was different. So what you have in the, in the Mr. Silva's direct, which is why this is not new, which is why it is cumulative on Sir Rebuttal, is these are the same guns and I'm going to point out a difference and the difference is the trigger activator. On Rebuttal, Mr. Rudolph testifies that actually these are two very different guns. Mr. Silva wants to then come back and explain one aspect of that in order to comport the testimony to be significant. But that's. But why is that legitimate Sir Rebuttal? Why shouldn't he, the defendant, have the opportunity to put before the jury that theory and with a factual predicate so that he can then legitimately argue it to the jury that the person who owned the gun is able to meet one of the differentiations that the government expert has now pointed out? Well, this is where the. In other words, why is it cumulative? That's what I'm having trouble understanding. In that we've already covered the subject. Well, the general subject, right. I mean, but, you know, you can talk about the identity of the gun and the government comes back and says, aha, we got you. There's something in here. It's like with the videotape in the Microsoft case. You know, they said we got all this and somebody found out that there was a time date stamp. So they come in and put that on. And then Microsoft comes back and says, well, we've got an explanation for that, too. The subject was certainly there. But it was one would argue that that was cumulative. Maybe you would. Well, the government actually would. And the point here is that depending on how one defines cumulative, the trial could go on forever with each little itty bitty point changing ever so slightly so as to be considered not cumulative. And in this case, the government would submit that's exactly what would have happened. And what Judge Mance did was properly exercise his discretion to stop the evidence at that point. Where does he find that it's cumulative? That's what I'm having a little trouble with. I agree that I understand the back and forth and the district judge has to let somebody put an end to it. And it's the government's right to at some point to say they can't keep going back and forth. But where does he find that this is cumulative? Well, I don't believe the Court actually uses the terminology that the Court makes a finding that this is cumulative. What he does say is that I don't think that this is newly discovered or newly sprung upon evidence. That suggests surprise or hiding the ball. What's that got to do with cumulative? What's that got to do with the Ninth Circuit standard? Because within that statement is, by implication, this has already been gone over. This is not a surprise. This is not new. We're referencing that the rebuttal testimony of Adam Rudolph in saying that this is this subject, the subject of the length of the barrel, the differences in the physical characteristics of the gun, wasn't a surprise. It's not new. It's old, which is why the Profferts' rebuttal of Mr. Silva is also a topic that's already been covered sufficiently. Well, I feel a lot more comfortable about this if the judge had talked about cumulative. Newly discovered and newly sprung sound like it's talking about something that's not cumulative but is therefore out because you should have anticipated it earlier. That's somewhat of a different standard, it sounds to me. The government would disagree, Your Honor. What Judge Matz was getting at there was the defense was making the argument, you've got to let us respond. This is a complete surprise. This is all new. And what the court was saying was, no, this is not new. This is something that's been throughout this trial. In fact, the court even says both parties have made extensive use of the gunning court and the videotape, clearly implying that this issue of the physical differences is not a new one, and therefore further testimony would therefore be cumulative. And that's exactly what would have happened. Again, the point is that depending on how one defines cumulative, narrowly or broadly, the evidence could go on and on and on with each difference. And in this instance, I think it's important to recognize that Mr. Silva was not going to explain all of the differences that Special Agent Rudolph testified to. There was no proffer that Mr. Silva was going to testify that the stock had been changed, that the flash suppressor had been changed, that the fore grip had been changed. The only proffer was to the barrel. Okay. Any questions? All right. Thank you very much, Your Honor. Government submits. You have a minute. Thank you, Your Honor. In addressing the standard, the standard has to be facts. It has to be whether the evidence is cumulative of other facts presented. It has to be. Witnesses are fact witnesses. Would that be true counsel if you decide to change your theory of the case? Forget everything I've said. I've got a different theory. And so now I want to bring in some new witnesses because I've got a different theory now. Now that I can see how this thing is playing out and it doesn't look like it's playing out well, I've got a different theory and I'm going to bring in a whole bunch of new people. I don't think that was the case here. But to directly answer your question, I think if the defense is playing games or the prosecution is playing games, no. If someone's bringing in an entirely new theory, you had your chance in your case in chief. You presented your theory. I would agree with I think the suggestion here is that, no, if you're – because otherwise trials could go on forever. I don't like – oh, I don't like that theory. Let's go to another one. I don't think that's what happened here. It's not a game. Here the government thought that originally that the weapon seized in Exhibit 2 was a fully automatic weapon. They had it sent back to D.C. It got looked at. Nope, it's not a – the government's changing their theory. I mean, the government fully – the government – it's Executive Director 57. They thought it was the same weapon originally. Actually, when they charged it. This is – to show you that – I mean, this is the important thing here. Because we're really arguing with the question of is this man innocent? And he served his time. It's not a question of time. I mean, he's sitting right here in court. He's got a felony conviction. It's not a machine gun. He was convicted on – before I jump right to it. Executive Director 57. So you thought that the gun was the gun in the video when you had the complaint filed. Yes. Okay. We have your briefs and your argument. Let's just – Any further questions? Okay. Thank you very much. Thank you. Appreciate the arguments. The case just argued will be submitted.
judges: Fisher, Bybee, Mahan